The Honorable Railey A. Steele State Representative Rt. 3, Box 52A Gentry, AR 72734-9305
Dear Representative Steele:
This is in response to your request for an opinion on four questions regarding the establishment of a Central Communications Center (CENCOM) in Benton County. Specifically, you have asked:
 (1) Whether the sheriff is required to provide dispatching services under its general duties as set out under Arkansas law.
 (2) Whether the quorum court has authority to create CENCOM and collect a $5.00 per capita levy under Arkansas statute or constitution.
 (3) Whether the $5.00 per capita levy would be double taxation.
 (4) Whether the county is opening itself up to civil liability for failure to dispatch a city officer.
In response to your first question, no specific Arkansas statute requires a county sheriff to provide dispatching services to county residents as part of its general duties. The general duties of a sheriff are set out in A.C.A. § 14-14-1301(a)(5) (1987) as follows:
 (A) The sheriff, who shall be ex officio collector of taxes, unless otherwise provided by law, shall perform such duties as are prescribed by law. It shall be the general duty of each sheriff to quell and suppress all assaults and batteries, affrays, insurrections, and unlawful assemblies.
(B) The sheriff shall:
 (i) Apprehend and commit to jail all felons and other offenders;
 (ii) Execute all process directed to him by legal authority;
 (iii) Attend upon all courts held in his county until otherwise provided by law; and
 (iv) Perform all other acts and things that are required by law.
Additionally, A.C.A. § 14-15-501 (1987) provides:
 (A) Each sheriff shall be a conservator of the peace in his county and shall cause all offenders against the laws of this state, in his view or hearing, to enter into recognizance to keep the peace and appear at the next term of the circuit court of the county and, on the failure of the offender to enter into recognizance, to commit him to jail.
 (b) The sheriff shall certify to the clerk of the circuit court all recognizances taken by him.
Neither of these provisions imposes a duty on a sheriff to provide dispatch services to county residents. Thus, dispatch services do not appear to be specifically included in a sheriff's general duties as prescribed by statute.
With regard to your second question, the proposed ordinance attached to your opinion request indicates that the Benton County Quorum Court is creating a central communications center as a separate department of county government.[1] It is my understanding that a 911 central communications center, authorized by A.C.A. § 12-10-304 (1987) and funded by a voter approved telephone charge in accordance with A.C.A. § 12-10-318
(1987), is already in place in Benton County.[2]
Nevertheless, county quorum courts are specifically authorized to establish, by ordinance, separate departments for the conduct of county affairs and may prescribe the functions and duties of each department. See A.C.A. § 14-14-704 (1987). This provision would appear to authorize the creation of the central communications center in question.
You have next asked whether the quorum court has authority to impose and collect a $5.00 per capita levy on a city or town in order to pay for the operation and maintenance of the central communications center. I note initially that no $5.00 per capita levy is mentioned in the proposed ordinance attached to your request. Assuming the eventual imposition of such a fee by quorum court ordinance, the law provides that a county, acting through its quorum court, is generally authorized to impose a special assessment or fee reasonably related to the cost of providing any special service.[3] See A.C.A. § 14-14-801(b)(11) (1987).
While this statute would appear to authorize the quorum court to impose the proposed fee for dispatching services, it should be noted that a court might determine that the $5.00 levy is in actuality a tax, that is, a contribution toward the cost of maintaining a traditional government public safety function, rather than a fee for a special service. See City of NorthLittle Rock v. Graham, 278 Ark. 547, 647 S.W.2d 452 (1983), wherein the Arkansas Supreme Court held that a $3.00 per month "public safety fee" added to the water bill of all North Little Rock residents was in actuality a tax exacted as a contribution toward the cost of maintaining the traditional government functions of police and fire protection. The court noted that inHolman v. City of Dierks, 217 Ark. 677, 233 S.W.2d 392 (1950), it found a $4.00 annual fee for fogging the city with insecticide three times a year to be a fee for services rendered rather than a tax. If the $5.00 fee in question were found to be a tax, it would be an illegal exaction absent the voter approval required by A.C.A. § 26-73-103 (1987). Id. Additionally, the general rule that an officer's right to charge fees derives from and is dependent solely upon statute would appear to prevent the $5.00 per capita fee from going directly to a particular county officer or his office absent a specific appropriation of the revenue to the budget of the particular office by the quorum court. SeeCampbell v. White, 294 Ark. 656, 746 S.W.2d 42 (1988); Atty. Gen. Op. No. 91-268.
In summary, although the quorum court would appear to have authority to create the proposed central communications center, legal questions might be raised regarding a five dollar per capita "fee." It is inappropriate for this office to speculate on how a court would resolve the factual questions determinative of whether such a charge is a "fee" or a "tax."
Your third question is whether the imposition of a $5.00 per capita levy on a city for the use of the central communication center would constitute "double taxation," because city residents are already paying for the sheriff's services through taxation. The concept of double taxation was discussed at length in an opinion issued by this office in January of 1991. See Atty. Gen. Op. No. 90-098. In that opinion, it was pointed out that while "double taxation" does not appear to be unconstitutional, it is not favored by the courts. The opinion also points out that to constitute double taxation in the objectionable and prohibited sense:
 the same property must be taxed twice when it should have been taxed but once; both taxes must be imposed on the same property or subject matter, for the same purpose, by the same state, government, or taxing authority, within the same jurisdiction or taxing district, during the same taxing period, and they must be the same kind or character of tax.
84 C.J.S. Taxation, § 39 at 131-32.
In my opinion, a $5.00 per capita levy on a city for this purpose would not constitute double taxation as that term is defined above. Most importantly, the two "taxes" would be imposed on different entities, one on the city residents and the other on the city itself. Because the term "double taxation" has been so narrowly defined, it is unlikely that a court would find it applicable to the $5.00 per capita levy in question.
With regard to your fourth question, it must be noted that counties generally enjoy tort immunity under state law. See
A.C.A. § 21-9-301 (Cum. Supp. 1991). The possibility of liability under federal law must also be considered, however, particularly with respect to suits filed pursuant to 42 U.S.C. § 1983 (1986). Under this provision, the county itself is accorded no immunity from suit and individual officers are entitled to only qualified immunity. See generally, Anderson v. Creighton,483 U.S. 635 (1987). Thus, while a county should generally incur no tort liability under state court law for the failure to dispatch officers, the county may not be immune from federal suit for the same conduct.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
Winston Bryant Attorney General
CT/WB:ch
[1] It is my understanding that this ordinance, No. 91-65, was adopted by the Benton County Quorum Court on December 12, 1991.
[2] You have not asked, and this opinion does not address, the responsibility of the existing 911 system for dispatching or the inter-relationship between the 911 system and the proposed central communications center. In my opinion, these matters would depend upon various factors, such as the type of 911 system established in Benton County, all of which are beyond the scope of your questions.
[3] It would, of course, be permissible for a city and county to agree upon a fee for this service by contract or other interlocal agreement.